1                    UNITED STATES DISTRICT COURT

2                        DISTRICT OF NEW JERSEY

3    UNITED STATES OF AMERICA   .
                               .    Case No. 2:14-mj-03225-3BC
4                               .
     vs.                        .
5                               .    Newark, New Jersey
     WIESLAW KOZLOWSKI,         .    November 19, 2014
6                               .
          Defendant.            .
7    . . . . . . . . . . . . . .

8

9              TRANSCRIPT OF BAIL MOTION HEARING
                BY THE HONORABLE JAMES B. CLARK
10               UNITED STATES MAGISTRATE JUDGE

11

12   For the Government:        JOHN S. HERRING, ESQ.
                                Office of The United States
                                Attorney General's Office
13                              970 Broad Street, Room 700
                                Newark, NJ 07102
14                              (973) 645-2700

15   For the Defendant:         LIVIUS M. ILASZ, ESQ.
                                1035 Route 46 East, Suite 105
16                              Clifton, NJ 07013
                                (973) 773-9060
17                              Email: ilasmolan@aol.com

18   Audio Operator:            Unknown

19   Transcription Service:     KING TRANSCRIPTION SERVICES
                                901 Route 3 South, Center Suite 3
20                              Pompton Plains, NJ 07444

21

22
     Proceedings recorded by electronic sound recording;
23   transcript produced by transcription service.

24

25

Proceedings                                        2

1        (Commencement of Proceedings at 12:43:49 p.m.)

2        THE COURT:  All right.  We're here for a bail hearing

3   in the matter of the extradition of Wieslaw Kozlowski,

4   magistrate number 14-3225 (jbc).  Mr. Kozlowski, I see you have

5   an interpreter here so I would ask my deputy to first swear the

6   interpreter for this proceeding.

7        THE CLERK:  Please sate your name for the record.

8        THE INTERPRETER:  -- Kipiniak, that's

9   K-I-P-I-N-I-A-K, Polish Interpreter.

10       THE COURT:  All right.  And now that we have the

11  interpreter sworn, why don't we have appearances of counsel.

12       MR. HERRING:  Justin Herring for the United States

13  and on behalf of the Republic of Poland, Your Honor.  Good

14  afternoon.

15       THE COURT:  Good afternoon.

16       MR. ILASZ:  And Livius Ilasz on behalf of the

17  defendant, I mean the person being extradited, Wieslaw

18  Kozlowski.

19       THE COURT:  Good afternoon.

20       MR. ILASZ:  Good afternoon, Your Honor.

21       THE COURT:  Well Mr. Ilasz, this is your application.

22  And I have a letter that you sent to me.  I have reviewed the

23  letter.  It's dated November 14, 2014.  I would also just say

24  for the record that I have a submission from the government

25  dated November 17, 2014.  I have reviewed that as well.  You're

Proceedings                                    3

1   more than welcome now if you would like to add anything you

2   want to what you've said in the papers.  I'll be happy to hear

3   you.

4        MR. ILASZ:  Yes, Your Honor.  I sent in the paper.  I

5   understand I was limited to five pages.  You asked me not to

6   exceed.  The government exceeded.  I could write more about the

7   case, but tried to be very concise.

8        Your Honor, this is the case of Polish government

9   trying to extradite my client for a crime, alleged crime

10  committed about 20 years ago.  We know that they knew the

11  client is in the United States from 2005.  They have done

12  nothing through 2010.  And as I -- the case of the defendant --

13        THE COURT:  Kapoor?

14        MR. ILASZ:  Yes, Kapoor, the court stated that it is

15  too bad that there is no agency on the part of the government

16  seeking extradition of his citizen, I mean citizen.  And this

17  identical case here.  Even the Polish government was waiting

18  not three years, but five years.

19        Without the proceedings being implemented in Poland.

20  They were just waiting.  This is the first thing.  I agree

21  mostly with the government that there's presumption of no bail.

22  But unless there are special circumstances.  And I understand

23  the trial judge has the power, has the discretion to find a

24  special circumstances.  And that's why I'm here.

25        THE COURT:  Well you would agree that there's two

Proceedings                                    4

1   steps to it really, right?  We have to determine that there's
2   no risk of flight, or that there's not a substantial risk of
3   flight and that there's no danger to the community.  And then
4   after that's determined we would determine whether there are
5   special circumstances that would justify release.
6          MR. ILASZ:  That's correct.  And I will talk about
7   both.  Before I will do that I want to let this Court know that
8   I spoke with the prosecutor today at 2:00 in the morning and at
9   6:00 in the morning.
10         THE COURT:  The prosecutor in Poland?
11         MR. ILASZ:  In Poland.
12         THE COURT:  All right.
13         MR. ILASZ:  Who is handling the case.  Who was
14  interviewing my client initially.  His name is Joseph Morafco
15  (phonetic).  I can spell it for the record, but this is the
16  prosecutor who interviewed my client 20 years ago and who is
17  from the case goes back.
18         He said that he's agreed to the plea bargain of
19  50,000 --, that's about $60,000 to be paid to the government as
20  a restitution and probation.  We had a disagreement I have to
21  tell this Court about the process of --.
22         He says he wants him there for a new pleading.  I
23  quoted to him, this is another supreme court of Poland, it can
24  be done in writing.  And I will bring to that attention of the
25  Polish courts about our disagreement.

Proceedings                                                    5

1          But the deal is there.  So if he's extradited to

2     Poland or he deal with the Polish authorities he will not be

3     coming here to job.  That's a good thing, a goodness for my

4     client.

5          Now my client has been here for the past 20 years.

6     He has been living in New Jersey as I described in the papers.

7     He has some personal problems.  He'd been drinking.  He didn't

8     commit any crime and he pulled out himself from the trial of

9     drinking by attending AA classes and now I know he's helping

10    others.  He is going to Church every Sunday.  He's the leader

11    of the prayer.

12         His family and the -- wife, his daughter, and his son

13    here later to testify about their father, about a loving

14    husband.  And about his binds to become --.

15         Judge, if he is about to flee the country or he want

16    to flee, the only place he can flee is Poland where he is

17    fighting.  He doesn't want to leave.  He wants to stay here.

18    There are ties.  He's employed two people who are relying on

19    him for their income.  He has a small company construction

20    company and he has been doing this for 20 years.

21         There was no crime committed over except what he's

22    alleged charged in Poland.  This is not an excuse, Your Honor.

23    But I've been a Polish attorney for the past 16 years, here

24    American attorney for 20 years but in Poland for 16 years.

25    During the transition period from -- to -- it was a common

Proceedings                              6

1   thing that any contraband instead of being destroyed because of

2   the country being in very poor state, instead of being

3   destroyed was taken by the people who confiscate it.  This is

4   why in Russia, in Eastern Europe this was a proper, the

5   culture.  It's not an excuse for him.  But this is the way the

6   business was done.  They didn't want to destroy anything.  They

7   want to use it.

8          If he was in Poland, Your Honor, he would not be

9   sitting here incarcerated.  The bail would be available to him

10  immediately and because in Poland this is classified as a

11  misdemeanor he would be eligible to walk on his own

12  recognizance without being incarcerated or even pay the bail.

13         In Poland a felony is anything that the minimum

14  penalty is three years.  He already had a minimum penalty from

15  three months to five years.  That's the bracket.  So this is

16  not a felony.

17         Because of the nature of the crime I don't think he

18  can be also the -- to the community.  It's not a violent crime.

19  He has been a police officer for a certain period of time.  He

20  allegedly --

21         THE COURT:  I've not seen anything that indicates

22  that he's a potential danger to the community.  Mr. Herring, do

23  you even contend that?

24         MR. HERRING:  No.  We don't believe he -- it is no

25  indication he's a danger to the community, Your Honor.

```
                          Proceedings                        7
```

1            THE COURT:  All right.

2            MR. ILASZ:  Judge, if you want the witnesses to

3    testify I see -- okay.  I discussed in this memorandum the case

4    which, and I'm citing Regarding Extradition of Harshbarger.

5    Bail was granted under restrictive conditions.  It was

6    identical situation.  The risk of flight -- the inter alia,

7    married, two children, and obtains what appears to be a sexual

8    abuse and the bail was granted.

9            And I understand the position of the government, the

10   potential embarrassment to the Polish government if he's

11   released today on bail and he escapes.

12           THE COURT:  Well I would think it would be an

13   embarrassment to the United States government --

14           MR. ILASZ:  Yes.  That's what I meant.

15           THE COURT:  --  for not turning somebody over to a

16   party with whom they have a treaty.

17           MR. ILASZ:  Yes.  But if you look at this man about

18   his history, about the family ties, not -- mistake, I mean

19   allegedly mistake he made in his life, we can put the -- of his

20   --.  He can report every other day to the police precinct.  We

21   can make his bail very restrictive and burdensome as far as his

22   -- officer.

23           But I believe there are special circumstances that

24   justify your discretion to let him go for the time of the

25   proceedings.  And I --, Your Honor.  I could explain.

```
                        Proceedings                    8
```

1    THE COURT:  Mr. Herring.

2    MR. HERRING:  Thank you, Your Honor.  Let me just

3 note at the beginning here that this has been an educational

4 experience for me since I was assigned this case last week

5 because this is a pretty sua generous type of proceeding in

6 terms of everything from the bail to the ultimate extradition

7 hearing.

8    And let me just drop -- make a quick comment, Your

9 Honor.  It's the government's request, and I thought -- this

10 morning, it was not for the purposes of today's bail hearing.

11 I was just laying out the law as it applies to the extradition

12 hearing that we would request to have an extradition hearing

13 scheduled at the earliest convenience because that is the I

14 guess next, and for purposes of the information or the evidence

15 the Court needs to gather.

16    The last step before the Court can make a

17 determination on the extradite-ability of Mr. Kozlowski.

18 Assuming that there's not consent or something else between now

19 and then.  And you know this is unusual in some ways because in

20 my, certainly in my role representing the government I'm acting

21 in a much more limited capacity than I would be at any other

22 bail hearing in any criminal matter, which is what I'm

23 accustomed to.

24    But that said, I think there's a pretty substantial

25 body of law, statutory followed by case law that lays out the

Proceedings                          9

1    circumstances here.  I think that, you know, and I should

2    fairly concede here that I think, we would have to see the bail

3    package, but if Mr. Kozlowski was U.S. citizen who was arrested

4    for this crime in New Jersey and a long time resident of New

5    Jersey I don't know that the government would be opposing a

6    request for bail.  And I think it's because of the special

7    circumstances and the law and all of the reasons underlying the

8    process of extradition that I am here to oppose this motion for

9    bail.

10           I should also note I learned an hour ago, Your Honor,

11   that there is an ICE detainer for Mr. Kozlowski.  I was

12   informed by the materials that he is not in the United States

13   legally according to the information they got from ICE. And

14   they have a detainer on file from ICE, I think it was filed

15   recently.  So it's my understanding that even if he were

16   released today the martials would transfer him to ICE custody

17   in that he does not have any, he doesn't have legal permission

18   to be in the United States.

19           And I think that -- so I think certainly to the

20   extent that it's the goal of Mr. Kozlowski to be released or to

21   get back to work, Your Honor, I think that's probably not going

22   to happen either way.

23           I should first note, Your Honor, that I think there

24   is a sense, that there is a risk of flight here given that Mr.

25   Kozlowski is already a fugitive from his native country, his

Proceedings                                    10

1    home country.  I believe the country of his birth and the
2    country where he was raised.  And he chose to, you know, leave
3    that country in light of this offense once.  It does create, it
4    has to create a certain suspicion of concern that he would be
5    willing to do that again even if it was just to relocate within
6    the United States.  You know, and I think if we were, as I
7    said, if it were not an extradition proceeding you might weigh
8    that against the bail package.

9         But when you also combine that the other independent
10   stuff here, which is the need, the burden on Mr. Kozlowski to
11   show special circumstances I think that weighs strongly in
12   favor of not granting bail.

13        And I won't review everything that's in the memo.
14   I'm sure, as you mentioned Your Honor, you're already familiar
15   with in terms of the case law and really the reasons for it.
16   The need for the United States not to be embarrassed for the
17   foreign policy objectives.  I mean I do, you can think of it in
18   two different ways.  One is the interest of the United States
19   in its own criminal justice system depends on a certain amount
20   of reciprocity in the United States' ability to get extradited
21   from foreign countries like Poland, fugitives from U.S. law,
22   depends on this kind of reciprocity.

23        And then moreover these treaties are signed in a
24   framework, you know, in a foreign policy framework, in a sense
25   that the United States foreign policy interests that are

1   properly managed by different parts of the executive branch at

2   the State Department.  And those interests weigh heavily in

3   this kind of proceeding.

4          Let me respond to a few of the arguments that Mr.

5   Ilasz made.  I would note here, one thing I would note, Your

6   Honor, is the courts I think have, I mean not completely

7   uniformly, but pretty uniformly held that the availability of

8   bail in the requesting country is really not a relevant

9   consideration under the special circumstances analysis.

10         And the courts generally held that for a couple of

11  reasons.  One is --

12         THE COURT:  Didn't the Kapoor court hold though that

13  it was a consideration they --

14         MR. HERRING:  That's why I said almost all.  I'll

15  give Mr. Ilasz credit.  He's certainly familiar with the

16  minority of cases that are most favorable for his client.

17         THE COURT:  Okay.

18         MR. HERRING:  And I think that's right, Your Honor.

19  I think that if you look at the weight of authority and the

20  reasoning there, I don't think there's a controlling third

21  circuit decision.  But the reasoning there I think is

22  compelling, which it's a dangerous route for U.S. courts in the

23  context of a limited extradition proceeding to try to

24  understand what the bail law is of a country like Poland, and

25  how it might apply to the specific case.

Proceedings                              12

1          It is often the case the defense is that there is no

2    mandatory bail for a wide range of crimes and how that plays

3    out to any particular crime is going to be very difficult for a

4    court to assess.  And really I think should be over weighed by

5    the special duty that the Court has to deliver the fugitive.

6          And I think the -- I'd also note, Your Honor, that

7    the, Mr. Ilasz also pointed out there was a delay.

8          And I think that, you know, that the court in the

9    eastern district court case in <u>Kapoor</u> also discusses this.

10   He's correct that the papers that we have from the government

11   of Poland state that there first meet appears to have been in

12   2005.  The first formal request from their government came in

13   2010.

14         And again, I guess it's a matter of -- it's a little

15   odd to be standing here and saying I just don't know why that

16   is, Your Honor.  I don't know.  Having done -- from this side I

17   know that it can be a strange and circuitous process.  I don't

18   know how firm the original evidence was in 2005.  I think my

19   underlying position is it's sort of outside the scope of my

20   role here representing the United States on the extradition

21   matter.

22         THE COURT:  I think that may be right that it's

23   outside your role.  But the evidence was probably, I mean your

24   allegation is that he essentially admitted to the crime back in

25   the mid-'90's, so I guess they had all the evidence in 2005,

Proceedings                                    13

1    right?  It hasn't really changed.

2         MR. HERRING:  I certainly -- I was referring to --

3    right.  Because there's nothing, again nothing in the

4    information that I have says there's any new evidence.  I guess

5    my -- what I don't know is how firm the evidence was of his

6    location and identity in New Jersey.  They clearly had a lead

7    that he was here in 2005 though.

8         And, you know, in the Kapoor case, which is I said I

9    think is an outlyer, I think it's a bit of an outlyer in these

10   bail cases.  And for that reason I caution, I suggest the Court

11   shouldn't rely on it too much.  But there's also a kind of

12   important distinction there.  And I read that decision, you

13   know there was really a sense there the court seemed to have a

14   strong sense that the extraditee, the fugitive, had a very

15   credible claim that this was really a matter of political and

16   ethnic persecution.

17        And if they had filed, and the judge in Kapoor seemed

18   to be impressed by the fact that there was already filed an

19   opposition to deportation under the convention against torture

20   and other immigration statues based on this persecution.  And

21   that already filed claim, the court wouldn't go into any

22   details, but referred to as kind of substantial possibility of

23   success.

24        And I think that really, you know, the court did a

25   multi-factor, took several factors into consideration.  I think

```
                         Proceedings                        14
```

1   that was an important one that's really not present here for

2   Mr. Kozlowski.  So I think that's an important distinction.

3         And then finally in response to Mr. Ilasz' argument I

4   do think there is, you know he asks in his letter for, that Mr.

5   Ilasz asked to have Mr. Kozlowski released then to have the

6   extradition hearing continued until, while he tries to resolve

7   it with the Polish government.

8         And I think that is, that would be somewhat of a

9   dangerous precedent or a dangerous road for this Court to go

10  down.  I think that we don't have any way of knowing -- I don't

11  have any reason to believe that Mr. Ilasz would have any reason

12  whatsoever to misrepresent his communications with the Polish

13  prosecutors.  But certainly, you know, the government for one

14  has a formal request with the government of the United States.

15  And I am here basically pursuant to that request.  And I think

16  it would be a dangerous road for the Court to go down to wait

17  or to waive the possibility of some kind of negotiated

18  resolution directly with the requesting country.

19        I think that that would be very difficult to know

20  what kind of resolution could happen in Poland as an initial

21  matter.  And I think it would really take the Court outside of

22  its role in this extradition proceeding.

23        I also have to say this is a matter of common sense.

24  I think that, you know, I don't know that much about how this,

25  I know nothing really about how this could be resolved in

```
                            Proceedings                    15
```

1   Poland.  And frankly not charged with representing anybody in

2   that matter.  But I think it's, you know, if it is a matter

3   that is easily resolved in Poland, which it may or may not be,

4   you know, Mr. Kozlowski, it seems like it would be in his

5   interest to resolve it as quickly as possible rather than to

6   continue to drag these proceedings out.

7           And, you know, if it is such a simple matter I do

8   also have to wonder why he has not resolved it.  Why he left

9   Poland and has not resolved it in the last 20 years or so.  But

10  he may ultimately be correct in which case he can resolve this

11  easily.  But that doesn't release the United States from its

12  obligations to comply with the terms of the treaty.

13          So, Your Honor, just to circle back to where I

14  started, really, you know, it's our view that the, this is laid

15  out in the extradition memo that I filed this morning.  The

16  government has now, has filed the documents that are duly

17  received according to the treaty from the government of Poland.

18  And so from our perspective are ready to proceed with the

19  extradition hearing, which would be, as is usually the case I

20  understand the government would proceed on those documents and

21  try to meet the five criteria for extradition.  And the ask the

22  Court to certify to the Secretary of State that Mr. Kozlowski

23  is extraditable.  That would be the next step.  And in so far

24  as Mr. Kozlowski is concerned about delay I think that there's

25  no  barrier to proceeding to that relatively quickly.

Proceedings                              16

1      THE COURT:  All right.  Mr. Ilasz, anything in

2  response?

3      MR. ILASZ:  Yes, Your Honor.  We had a hearing about

4  the week and a half ago.  And the government was well aware, I

5  don't know -- Mr. Kozlowski.  I really object to any

6  information Mr. Kozlowski gave to this immigration agents

7  regarding his --.  They're not supposed to talk to him without

8  me being present or aware of that or he would consent to them.

9      His immigration status for the sake of extradition

10  proceedings is irrelevant here before this Court.  I understand

11  there is an immigration detainer.  And I understand I have to

12  show up before the immigration judge.  And that's what will be

13  done in due course.

14      THE COURT:  But is it true he would be handed over to

15  the immigration officials after this  hearing if we -- if

16  that's the case in some sense we're going to move as

17  expeditiously as I possibly can to the actual substantive

18  proceeding here.  And, you know, in some ways if it's just

19  going to be a change of a place to sit while he waits for that

20  hearing I imagine Mr. Kozlowski probably wouldn't want that to

21  happen.  I certainly wouldn't.  If I was, you know, in one

22  place and just ferried off to somewhere.  I mean, maybe it

23  makes no never mind, but it's certainly not getting him where

24  he wants to be by virtue of this proceeding.

25      So in a way it would render this proceeding not moot

```
                       Proceedings                      17
```

1   but inconsequential.  Isn't that right?

2          MR. ILASZ:  No, Your Honor. I will now assure this

3   Court that the question of bail, I mean the bail is more

4   available in the negotiation part.  And I will oppose this

5   almost as being sure --

6          THE COURT:  But my question -- my question to you is

7   suppose I were to grant your application and afford Mr.

8   Kozlowski bail, as I understand it now he's going to be

9   immediately picked up on the ICE detainer.

10          MR. ILASZ:  Yes.

11          THE COURT:  And you'll make your application.  But

12   that will probably take a little time.  And as I said, I'm

13   interested in getting to the merits of this relatively quickly

14   for your benefit, for the government's benefit, for everybody's

15   benefit.  I don't want this to hang around for a long time.

16   I'd rather have it all worked out.

17          And I'm wondering would you even have a chance to

18   challenge the ICE detainer before we got to our hearing on the

19   substance of this extradition proceeding.  So I'm wondering

20   practically speaking is this all going to mean very little in

21   the end.

22          MR. ILASZ:  Your Honor, it would mean a lot to us.

23   And I will tell you I am not -- I prefer not to discuss certain

24   aspects of his extradition proceedings.  But I can tell you one

25   thing.  That what happened, what allegedly happened what he did

Proceedings                                        18

1   it was in the small town.  Prosecutor claims that he was the

2   leader of the group.  He -- of his coconspirators and he's very

3   happy that he was seeking, although he doesn't have to Your

4   Honor, because we solved the case.  And I explained to him

5   about the decision of the supreme court and he's not going to

6   get him on the basis that he needs to see him because he needs

7   to allocute his plea.  It's not the case.

8              He wants to see him beyond --

9              THE COURT:  Just as an --

10             MR. ILASZ:  What?

11             THE COURT:  Just as an aside, when, I mean you don't

12  need, I mean the substance of the extradition proceeding is for

13  another day.

14             MR. ILASZ:  Yes.

15             THE COURT:  How soon do you think you're going to be

16  able to, when you tell me that you could get this taken care of

17  in writing and he might not even have to show, how soon would

18  you be able to do that?  What's your --

19             MR. ILASZ:  You are talking about Polish or eviction?

20             THE COURT:  Poland.

21             MR. ILASZ:  Poland.  I will introduce to the Polish

22  court the plea agreement for the Polish court to approve it,

23  which the bail is extremely, I mean not the bail, the penalty,

24  the money is extremely high for Poland.  But my client consent

25  to it.

Proceedings                                  19

1       And have the court approve it and ask the court to

2  take his plea.  As all the -- I'm doing, Your Honor, it happens

3  through the -- the court can use a legal help of Polish counsel

4  in New York City through the Polish consulate to take the

5  statement from him.  That he is admitting his guilt and he's

6  paying the penalty and tell him about the probation.

7       He can do this through me.  I am appearing in court

8  with his authorization in Poland.  He doesn't want to talk

9  about it.  He says this is the agreement, this is the penalty,

10  I want to see him here.  And I told him I don't see why.

11       THE COURT:  And all I'm curious about is how long do

12  you think that that process will take?

13       MR. ILASZ:  Your Honor, it is on the Polish court.  I

14  will act expeditiously.  I will write to the Polish court.  I

15  will do this over the weekend.  I have a Warsaw office.  I'm

16  going to send my associate to deliver the papers to the Polish

17  court.  And whenever the Judge is at leisure to look at them

18  and give a decision.

19       And, Your Honor, what is the most important thing, I

20  see under the circumstances here a potential -- before the

21  Immigration court for --.  I feel that by this given

22  circumstances I spoke with my client.  He's afraid to go back

23  to Poland.  Those people whom, in quotes, he left home because

24  of --.  According to the prosecutor they served time.  And

25  they're upset with him.

Proceedings                                      20

1    And I believe behind the stages this is the reason

2    why the prosecutor insists on him being there personally.  This

3    is my thinking.  I have to research this more.  See who are

4    those people who he testified against, where they are, what

5    kind of file they have, and how they interact with the

6    prosecution.

7    But there's a professional claim.  With the respect

8    to the Immigration court, Your Honor, I went -- judge.  I

9    explained the judge the proceedings.  He's in district court

10   here.  And I asked for bail.  And for him being here with the

11   family for past 20 years the judge asked me, okay, I'm going to

12   give you the bail, probably it will.

13   What are the basis?  What is your immigration relief?

14   And I'm going to tell him.  I have a potential client --.

15   That's what I'm going to say.  If the facts oppose that I

16   haven't had a chance to talk to him in details, but to date

17   telephone conversation with the prosecutor make me new thinking

18   about the whole thing.

19   THE COURT:  Well that Immigration judge doesn't

20   necessarily answer to the same standards that we do when we're

21   considering bail applications.

22   MR. ILASZ:  Your Honor, from my experience unless

23   there was a crime committed like a crime of the moral turpitude

24   described in the immigration statute committed in the United

25   States like drug related offense or murder or

Proceedings                                          21

1   very -- the bail is available.  They don't, I mean the

2   Immigration court will keep the bail.

3           THE COURT:  No, what I mean, yeah, you may be right.

4   My only point was though I think that the standards that I am

5   operating under in the extradition arena are higher standards

6   than what they would be applying in the --

7           MR. ILASZ:  Your Honor, if I am concerned about issue

8   of the bail it is not the Immigration court, it is your court.

9   That's the bottom line.  I am not worried about the

10  Immigration.  I know from the experience is high likelihood I'm

11  going to get a bail for him.  If Your Honor finds a special

12  circumstances.

13          And I want to tell you, Your Honor, on the human

14  side, I went through few cases of similar like his extradition.

15  I never had a client more sympathetic to the bail and more

16  safer for the Court to release him than my client is.

17          THE COURT:  I've already said that I don't find any

18  reason to think that he's a danger to the community.  And I

19  don't thing the government does either.  And I'm willing to,

20  you know, I know you offered his family members' testimony.

21  I'm willing to assume that their testimony would be that he's a

22  good father, a good husband.  And, you know, an important part

23  of their life and that they would like to have him home.  I

24  understand that.

25          But anything else, Mr. Ilasz?

Proceedings                                    22

1      MR. ILASZ:  No, Your Honor.  It's just I -- that this

2  is the best possible case to apply the special circumstances in

3  his favor I've ever had.  And I beg this Court that he goes

4  back to work, take care about his family, while I have a chance

5  to work with his case in Poland and hopefully to get a happy

6  conclusion before the Immigration judge.

7      And I think from his moral standard and his life for

8  the past 20 years he deserves that.  Even deserve that

9  overcoming and serving other people on the AA.  I mean, this is

10  something to tells you about the man and he's doing this pro

11  bono of course.  Thank you, Your Honor.

12      THE COURT:  All right.  Anything else, Mr. Herring?

13      MR. HERRING:  No, Your Honor.

14      THE COURT:  All right.  Well, you know, this is not,

15  this is a difficult situation.  I appreciate that.  I will note

16  for the record that there are no formal provisions in the

17  United States Code or the Federal Rules authorizing bail to my

18  knowledge in extradition matters.  And there's a strong

19  presumption against it.  And for that the government has cited

20  the case, Wright v. Henkle, 190 U.S. 40, 1903.

21      A jurisprudence in this area has developed that bail

22  will be only granted in international extradition cases where

23  there is a showing of, where there is a showing that there's no

24  risk of flight or danger to the community, or not a substantial

25  risk of flight or danger to the community.  And there's also a

Proceedings                                    23

1    showing of special circumstances justifying bail.

2            And the risk of danger and flight being the first

3    inquiry as supported by U.S. v. Romana, 553 F.2d 662.  That's

4    the Eastern District of Texas, 2008.  And the showing of

5    special circumstances being the second inquiry as supported by

6    Hu Yau-Leung v. Soscia, 649 F.2d 914 (Second Circuit 1981).

7            And the parties appear to be in agreement that those

8    are the two inquiries that we have to engage in.  The danger to

9    the community and the risk of flight.  And then and only then

10   the question of whether special circumstances exist.  I would

11   note that the burden of showing all of these things in an

12   extradition case is on the defendant.  And that's noted in the

13   Kapoor case which is a case upon which the defendant has relied

14   heavily in this proceeding, 2011 Westlaw 2296535.

15           And I would also note that the trial court has broad

16   discretion with regard to what circumstances or a combination

17   of circumstances will constitute special circumstances for the

18   purpose of bail.  And that's supported by Beaulieu v. Hartigan,

19   554 F.2d 1, and that's a First Circuit case from 1977.

20           And the defendant has made many, you know, spirited

21   arguments regarding the granting of bail urging things like

22   substantial family ties that show no risk of flight.  He's

23   suggested that there is no danger to the community.  And I

24   agree with that.  And I think the government agrees with that.

25           And he's also made some spirited arguments regarding

1  special circumstances.  You know, that bail very well may be

2  available on this offense in Poland.  That the delay in Poland

3  seeking extradition ought to be considered a special factor or

4  at least part of an overall special factors analysis.  And

5  indeed some of these authorities cited by the defendant

6  indicate that those are relevant considerations.

7         The defendant cites four, primarily four cases upon

8  which they rely for authority in support of an order of release

9  here.  There's Hu Yau-Leung v. Soscia, which is 649 F.2d 914;

10 In the Matter of Extradition of Harshbarger, which is 600

11 F.Supp.2nd 636, Gouvei v. Vokes, 800 F.Supp. 241; and the

12 Kapoor v. Dunn case, 2014 Westlaw 1803271.

13        Those cases granted, I think all four of them granted

14 some form of bail, some form of release pending the extradition

15 proceeding.  And did find special circumstances justifying

16 release.  But apparently bail was granted in those cases after

17 the court indicated it was satisfied that there was no risk of

18 flight or dangerousness, which again is our first inquiry under

19 the applicable case law.

20        The cases do have an interesting discussion of what

21 might constitute special circumstances and some, like the

22 Kapoor case in particular, mention that a delay in seeking

23 extradition might be a part of making a finding of special

24 circumstances.  Bail being available in a foreign country is

25 certainly addressed in some of those cases.

Proceedings                                    25

1          But I find that they're not supportive of release in

2    this case because they present vastly different situations with

3    respect to the risk of flight.  In those four cases it was

4    determined either that there was not a concern that there was a

5    risk of flight or in fact there just was no challenge by the

6    government to a bail package being accepted by the court.

7          And as noted the risk of flight needs to be

8    determined before we even go to the special circumstances

9    analysis.

10         Now in the four cases that the defendant has cited I

11   would go through each of them.  And in the Hu Yau-Leung case,

12   and I'd like to go through each of them to demonstrate how the

13   risk of flight is a different situation in those cases than it

14   is here.

15         In the Hu Yau-Leung case the gentlemen who was being

16   held and who was granted bail only had charges levied against

17   him five months after he left Hong Kong for the United States.

18   In the Harshbarger case there were charges and warrants only

19   after the defendant came to the United States and in any event

20   the United States Attorney's Office did not contest bail.

21         In the Gouvei case a sentence was imposed in Portugal

22   in absentia.  And there's no allegation from what I can tell in

23   the case that there was previous flight from any charges or any

24   sentencing.

25         And in the Kapoor case even the defendant, the Kapoor

Proceedings                                     26

1   case, which is probably the case the defendant relies on most

2   heavily.  In Kapoor the defendant came to the United States in

3   1999, apparently very shortly after the offending conduct that

4   the Indian government began to investigate.  And a warrant for

5   her arrest was only issued in 2010, almost 11 years later.  It

6   was not as if she had fled charges or a plea of guilty or a

7   confession or anything of the sort and had come to the United

8   States under those circumstances.

9        Again, in all four of these cases the fact that the

10  people came to the United States was not a direct result of

11  charges against, charges being immediately leveled against them

12  and the prospect of imprisonment being right there and

13  imminent.

14       Here it's different.  I mean here we are in this

15  court.  We are entertaining this entire proceeding because the

16  defendant fled.  I mean we have credible evidence that the

17  defendant was charged.  The defendant knew that there were

18  penalties to pay.  The government has indicated that the

19  defendant as much as confessed to the offenses.

20       And I don't know that the defendant really disputes

21  there.  There's a half-hearted denial in Mr. Ilasz' letter,

22  but, you know, it's defendant's burden to prove that he didn't,

23  you know, he's not a risk of flight and given the allegation

24  that he had confessed to these crimes and was looking at jail

25  time and then fled because of that, it's very difficult for me

Proceedings                                        27

1   to come to the conclusion that he is not a risk of flight at

2   this point.

3          I understand that 20 years circumstances have

4   changed.  He probably is less of a risk of flight today than he

5   was in the mid-'90's.  He does have a family.  He does have a

6   wife.  He does have a community that he lives in.  But given

7   the fact that, again, we're here unlike the cases that are

8   cited in defendant's brief to the Court, we're here because the

9   defendant fled the charges and fled, you know, the immediate

10  threat of punishment.

11         I can't conclude given the high standards that we are

12  operating under in the extradition arena.  I simply can't

13  conclude that the risk of flight has been dissipated to such a

14  point that I feel comfortable or that I feel that it's

15  appropriate to release him pending the substantive hearing on

16  extradition.

17         I understand that's not what defendant wanted to

18  hear, not what you wanted to hear, Mr. Ilasz, but I in some

19  respects believe that, well I conclude that in some respects

20  given the high standards our hands are tied.  I don't think

21  that it's appropriate that we release the defendant in this

22  situation.   You know a granting bail, I think the government

23  aptly noted, really doesn't do very much for Poland and Poland

24  is counting on the United States to abide by its treaty and to

25  turn over a person that they are seeking for this process.

Proceedings                                    28

1        If we grant bail and the bail is skipped Poland --
2   you know, bail is intended as some sort of recompense to the
3   government that has not been able to secure the attendance of
4   the person they're seeking.  It won't help Poland at all.
5   Poland needs to depend on the United States to live up to its
6   treaty and obligations and to turn over the defendant should
7   extradition be determined to be the appropriate remedy.
8        And I'm not saying that that's the case at all.
9   We'll deal with that substantive question at another time.  So
10  that's the decision for now on bail.  I'm also, I don't know
11  that it's changed -- I don't know that it's changed my mind the
12  information that's brought -- or I can say for sure that it
13  hasn't changed my mind.
14       I would be deciding this case this way even if the
15  information on the ICE detainer had not been brought to my
16  attention.  But I do believe that that's a complicating factor
17  here.  And, you know, I hope that we're able to address all of
18  these things in due course.
19       Now that said, I fully appreciate that detention is
20  not something that Mr. Kozlowski wants to endure longer than is
21  necessary.  I do not want Mr. Kozlowski to endure detention
22  here longer than is necessary.  I do want to take up the
23  question of extradition, the substance of extradition as soon
24  as you two physically think we can do that.
25       The complicating factor for me now, Mr. Ilasz, is

Proceedings                                29

1   your working with the Polish authorities and you think you

2   might be able to resolve this case with the Polish authorities.

3   I don't know how soon you can do that.  You sound like you

4   might be able to do that relatively soon, but I guess it's

5   anybody's guess.

6           What are your feelings on a date for a hearing on the

7   question of extradition?  Given all the concerns that you have

8   going on right now.

9           MR. ILASZ:  The answer is I don't know.  I am hopeful

10  is relatively short time period.  I had before my client today

11  that we establish the penalty that he's facing.  There is

12  question of procedural issue that I explained to the Court how

13  we going to accomplish it.

14          I do not believe his physical presence is needed

15  there.  That's according to the supreme court decision.  The

16  prosecutor sees this at this time differently.

17          THE COURT:  You have competing, I know you have

18  competing interests here.  You don't want to send him to Poland

19  and you'd like to work it out on the papers.  But at the same

20  time I don't want to hold him here too terribly long on these

21  charge, you know, on the extradition thing because I am

22  sensible of the fact that nobody wants to be in detention any

23  longer than is necessary.

24          MR. ILASZ:  Your Honor, I am, I want to be frank with

25  this Court.  I am not sure if he's extradited to Poland this

Proceedings                                    30

1   offer will set.  Okay?  If he's possibly taken to Poland

2   probably he's going to face jail time.

3           I said to the Polish prosecutor, the Polish

4   prosecutor is not aware he's in custody or he was detained.  I

5   told him I had a hearing.  I didn't explain what kind of

6   hearing.  He doesn't, he's not sure he's detained or not.

7           But he agreed to the penalty.  And I want to note

8   this to the Court, confirm this to the Court, and to the

9   prosecutor.  I don't want him to change his mind.  And then I'm

10  going to wrestle with him over how we're going to accomplish

11  it.

12          And I was hoping meanwhile he's going to be able to

13  walk and work once I am trying to accomplish.  I will note --

14  it happened today at 2:00 in the morning, New York time.  I

15  will do the papers this week.  Over weekend I'm going to help

16  my associate, have them fedex it to Polish court which is in

17  multiple forms.  It's a relatively small town.

18          And hopefully, you know, it's also not good for my

19  client for me to appear desperate about the resolution of this

20  case because the judge might get a little suspicious or

21  uncomfortable with me.  But I will follow up in due course.

22  I'm hopeful Your Honor.  But it's hard to say.  It's from town

23  to town in Poland -- case laws for those --.  So --

24          THE COURT:  Mr. Herring, what are your thoughts on

25  the timing of a hearing?  Would you want to talk to Mr. Ilasz

Proceedings                                      31

1    and come to a collective agreement on what would be

2    appropriate?

3           MR. HERRING:  I guess, my preference would be to

4    schedule it, Your Honor, and then see where we can go from

5    there.  I think that, you know, as I said earlier, at this

6    point I believe I've filed everything the government is going

7    to file in advance of that hearing and we're going to rely on

8    those filings.  And that's it in terms of the hearing.

9           So I mean we're ready to go very, very quickly.  My

10   sense of it is that I'd like to schedule it now if possible.

11          THE COURT:  You want to take a moment and discuss it

12   with Mr. Ilasz and see if you can come to an agreement?  I can

13   just give you a date, but I'd rather work with both of you to

14   make it, you know --

15          MR. ILASZ:  Your Honor, I can answer to the -- I

16   following the inclination of this Court.  This Court knows what

17   I'm going to do.  Perhaps it would be a better idea if I will

18   contact Mr. Herring beginning of next week having the papers

19   sent to Polish court and talking more to the prosecutor.

20          The prosecutor indicated he wants to meet with me

21   personally beginning of December.  And hopefully, I am very

22   hopeful with all this effort I am putting into this case he

23   will agree to have this plea taken without Mr. Kozlowski

24   appearing before the court.  But I don't know that.

25          For me the most important thing is to secure his

Proceedings                                          32

1    sentence so he won't serve time in Poland.  But the less --

2    there is also, Your Honor, there is an instrument in Polish law

3    that I can ask the court, which I am going to do, that

4    guarantee him immunity for the time he comes to Poland and take

5    the plea.

6           But the problem is, Your Honor, with this resolution

7    if he leaves the United States he cannot come back because he

8    was illegally here.  So I had a problem with immigration law

9    that I have to face.  So I prefer for him not to leave the

10   United States, wrestle with the Immigration court if we have a

11   basis for it.  And I will discuss this further with my client.

12   And hopefully I will do my best.

13          But I am afraid he has to stay in jail for another

14   month or so.  And I will -- I respect, I disagree with this

15   Court view.  I think the best would be grant him here.  And I

16   will take this from here.  And I think I will call him, Mr.

17   Herring, early next week.

18          Maybe there is resolution -- the prosecutor will

19   receive and read my court papers.

20          THE COURT:  Well let me ask you Mr. Herring.  You say

21   you've submitted everything you think you're going to submit in

22   connection with it?

23          MR. HERRING:  Yes, Your Honor.  I plan to of course

24   to review that.  But as I understand it's pretty typical in

25   these cases the way that the government proceeds is to

Proceedings                                          33

1   introduce documents that have been provided by the government

2   of Poland and certified pursuant to U.S. law in the treaty,

3   which we have.  And that's set forth a little bit in the memo

4   that I just filed which I know the Court hasn't had a chance to

5   look at yet.

6            And those documents describe the crimes sufficient

7   for the Court to find really two key things.  One is duo

8   criminality.  That it is a crime in Poland and in the United

9   States.

10           And it states that it is a crime in Poland.  And so

11  the Court is entitled to rely on that.  But it's punishable by

12  more than one year in prison.

13           And the general conduct, the Court then considers the

14  general conduct described would also be a crime punishable by

15  more than one year in the United States under either state law

16  or federal law.  And we would submit it's both.  It would be a

17  felony under both.

18           And then the Court would have to find that the duly

19  admitted documents that were admitted at that proceeding

20  allowed to find probable cause that the crimes happened.  And

21  then the Court could certify it.

22           THE COURT:  All right.  Well --

23           MR. HERRING:  That's the proceeding.

24           THE COURT:  But do we need submissions from the

25  parties in advance of an extradition hearing?

```
                    Proceedings                       34
```

1        MR. HERRING:  Well the government has already --

2        THE COURT:  Further submissions from you?

3        MR. HERRING:  I don't unless it's in the nature of a

4   reply.

5        THE COURT:  Okay.

6        MR. ILASZ:  Your Honor, I will serve those documents

7   today at 11:00 in the morning in -- of extradition.  I will

8   oppose the extradition.  I will never forgive myself if I let

9   this guy go to Poland and something happened to him beyond what

10  the realm of law is.  Okay?  I'm a little concerned about this

11  as I explained this to the Court.

12       It would slow time -- Your Honor, to oppose this

13  request for extradition.  And I understand the Court also is

14  mindful about the fact I have to work on the Polish issue a

15  little bit.  I need a little bit --

16       THE COURT:  Lets set some dates.  And I'll give you a

17  little time.

18       MR. ILASZ:  All right.

19       THE COURT:  And if dates need to be adjusted we'll

20  adjust them.  Mr. Ilasz, if you're going to submit a document

21  in support, or in opposition to extradition, lets submit that

22  document by December 5th.  In keeping with what we did before

23  keep it to lets say 10 pages.  All right.

24       MR. ILASZ:  Ten pages.

25       THE COURT:  Mr. Herring, if you're going to respond

```
                        Proceedings                        35
```

1   to that, and Mr. Ilasz was right.  We had set a page limit on

2   the --

3            MR. HERRING:  I apologize, Your Honor.  I wasn't

4   aware of that.

5            THE COURT:  If you are going to submit a response to

6   that do it by December 10th.  And make it five pages or less

7   because, you know, you already have submitted substantial

8   documents.

9            MR. HERRING:  I apologize, Your Honor.

10           THE COURT:  And we'll set a date for the afternoon of

11  December 12th.  That gives, that's not extraordinarily off in

12  the future, but it's not tomorrow or the next day.  It

13  hopefully balances Mr. Ilasz' need for a little time with my

14  concern that Mr. Kozlowski is being detained.

15           And I don't like the -- I don't relish the fact that

16  he's detained.  You know, it's something that I would like to

17  keep as a short a period as possible.

18           So we'll operate with those dates.  If for some

19  reason they need to change you guys confer and let us know and

20  we'll consider changing them.  And if not we will see you on

21  the 12th and we'll make a final decision on all of this.  All

22  right?

23           MR. ILASZ:  Yes, Your Honor.  The only way to change

24  that if I, because I think the beginning of December I might

25  fly to Poland.  Hopefully this case will be before Polish judge

```
                        Proceedings                        36
```

1   in that time.  So I'm going to let you know, we're going to --
2   a few days --
3          THE COURT:  Well if you're flying to Poland then
4   you're trying to work this out.  And you need a few more days
5   or reschedule, you let us know and we'll consider rescheduling.
6   You know, the fact that Mr. Kozlowski is being detained though,
7   I think adds an urgency to all of this.  Lets keep --
8          MR. ILASZ:  I --
9          THE COURT:  -- moving forward as quickly as we can.
10  All right.
11         MR. ILASZ:  Absolutely, Your Honor.  But also I don't
12  want to, because this is a very sensitive case especially with
13  the Polish government acting the way its acting, I don't want
14  to do a sloppy job and regret something in the future.  So
15  that's my position.  I prefer a little delay than --
16         THE COURT:  All right.  You keep us apprised.
17         MR. ILASZ:  Yes. That's what I will do.
18         THE COURT:  As I said, I built in three and a half
19  weeks.  And if you need more time you let the Court know and I
20  will consider it.  All right?
21         MR. ILASZ:  Sure, Your Honor.
22         THE COURT:  All right.  Is there anything else from
23  the government?
24         MR. HERRING:  No, Your Honor.  Thank you.
25         THE COURT:  Anything else, Mr. Ilasz?

```
                       Proceedings                    37
```

1          MR. ILASZ:  No, Your Honor.

2          THE COURT:  All right.  Thank you folks.  Mr.

3    Herring, can you submit a detention order as well?

4          MR. HERRING:  Yes, Your Honor.  No problem.

5          THE COURT:  Thank you.

6          (Conclusion of Proceedings at 1:41:07 p.m.)

Proceedings                                                    38

<u>CERTIFICATION</u>

1

2          I, JANICE T. WARNER, Transcriptionist, do hereby

3   certify that the 37 pages contained herein constitute a full,

4   true, and accurate transcript from the official electronic

5   recording of the proceedings had in the above-entitled

6   matter; that research was performed on the spelling of proper

7   names and utilizing the information provided, but that in

8   many cases the spellings were educated guesses; that the

9   transcript was prepared by me or under my direction and was

10  done to the best of my skill and ability.

11          I further certify that I am in no way related to any

12  of the parties hereto nor am I in any way interested in the

13  outcome hereof.

14

15

16  S/ *Janice T. Warner*              <u>November 21, 2014</u>

17  Signature of Approved Transcriber        Date

18
    Janice T. Warner, (AAERT #00315)
19  King Transcription Services
    901 Route 23 South, Center Suite 3
20  Pompton Plains, NJ 07444
    (973) 237-6080

21

22

23

24

25